IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH NESBIT, on behalf of himself ) <br> and for the class described in the complaint, ) <br> *et al.,* ) <br> ) <br>     Plaintiffs, ) <br> v. ) <br> ) <br> UNISYS CORPORATION, ) <br> ) <br>     Defendant. ) | CASE NO. 2:05-cv-528-MEF <br> (WO) <br> [DO NOT PUBLISH] |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Kenneth Nesbit ("Nesbit"), William Galloway ("Galloway"), and John Stevenson ("Stevenson") bring this breach of contract action against their former employer, Unisys Corporation ("Unisys"), seeking damages for Unisys' allegedly wrongful termination of the Plaintiffs' employee incentive plans for the year 2001. The Plaintiffs have also asked the Court to certify a class made up of their fellow employees who were similarly injured when Unisys announced it would not pay any incentive compensation for that year. This cause is presently before the Court on the Plaintiffs' Motion to Certify Class (Doc. #29) filed on December 5, 2005. After considering the parties' submissions and all the supporting documentation attached thereto, the Court finds, for the reasons set forth below, that the motion is due to be DENIED.

**JURISDICTION AND VENUE**

The Defendant removed the case to this Court from the Circuit Court of Montgomery County, Alabama pursuant to the Class Action Fairness Act. 28 U.S.C. §§ 1332(d), 1446,

& 1453. The Court finds diversity of citizenship sufficiently established and an adequate amount of damages sought to satisfy these provisions. The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## FACTS AND PROCEDURAL HISTORY

During 2001, the Plaintiffs in this case were each enrolled in one of three distinct incentive compensation programs offered by their employer, Unisys. Nesbit held the position of senior solutions specialist at Unisys and participated in the Practice Bonus Plan. The stated aim of this plan was to compensate the outstanding performance of individual employees who achieved both divisional and individual benchmarks. While the Practice Bonus Plan did provide some objective measures for determining eligibility, the express terms of this program provided that payouts were "ultimately at the sole discretion of management" and stated that Unisys "reserve[d] the right to revise any provisions of this Plan, or to terminate the Plan itself, at any time, in its sole discretion without prior notice." Stevenson was enlisted in a program, the Practice Recognition Plan, that pursued similar objectives as those of the Practice Bonus Plan and that contained the same language vesting the ultimate authority over bonus payouts in Unisys management.

According to Unisys' director of compensation, Mark Day, the company relies on a group of each plan enrollee's supervisors to assess an individual's eligibility for bonus compensation under these two programs. In reaching their determination on a particular employee's bonus eligibility, Unisys supervisors consider the employee's performance, his

2

or her business unit's productivity, and the relative quality of these measures compared to others in the company. In the end, managerial discretion is the key factor in eligibility decisions, and approximately ten percent of the enrollees in the Practice Bonus Plan and the Practice Recognition Plan earn incentive compensation in any particular year.

Nesbit acknowledges that Unisys retained considerable discretion over eligibility determinations, however, he asserts that his supervisors subsequently modified the plan's conditions through oral representations that assured him benefits under the plan. Stevenson—who has been out of the country during the entire pendency of this litigation—has yet to provide testimony in this case and has thus not stated that his plan extended beyond the plain terms of the documentation.

Galloway worked as Unisys' director of department of defense programs in 2001. During that year, he participated in the Program Manager Incentive Compensation Plan, which conditioned bonus compensation on the achievement of certain goals that the company set both for the employee individually and his or her division collectively. The plan's objectives designated specific revenue and marginal profit targets for 2001. Another part of the program, titled Business Objectives and Accomplishments, listed a number of additional goals ranging from the development of certain personal skills to "[e]nhanc[ing] the Unisys reputation in the industry." Unlike Nesbit's and Stevenson's packages, the Program Manager Incentive Compensation Plan did not vest complete authority in Unisys to cancel the plan at any time. Instead, it stated: "The Company may eliminate or reduce the incentive

compensation at any time during the year without prior notice provided that payment is made for the period prior to the effective date of the change and is established on the basis of proration." Thus, Unisys was obliged to take any action to cancel this plan during a specified period before the end of that particular timespan.

Galloway testified that his receipt of a bonus under this program was dependent upon his successful accomplishment of both the numerical targets that measured revenue and profit and the personal goals reflected in the Business Objectives and Accomplishments form. It is currently unclear whether Galloway reached either of these sets of objectives. The parties disagree over whether Galloway achieved the targeted sales and profit numbers as Galloway's records do not match those Unisys has provided. Also, the evaluation of the more subjective Business Objectives and Accomplishments was dependent upon a year-end meeting between Galloway and his manager, Jim Wilson, in which they were to examine Galloway's performance on each of the listed objectives. The evidence before the Court does not establish whether this meeting ever took place or what the result of the conference would have been had it occurred.

On January 3, 2002, Larry Weinbach, Unisys' chief executive officer, sent an email to all plan enrollees, in which he explained that the company had not met its financial objectives in 2001 and that this shortcoming precluded bonus payments under all incentive plans. Galloway was initially unsure whether this announcement affected his program and filed a grievance with Unisys on April 18, 2002 asking for clarification. On May 16, 2002,

Unisys responded and informed Galloway that bonuses would not be paid under the Program Manager Incentive Compensation Plan for 2001.

The Plaintiffs filed their complaint in the Montgomery County Circuit Court on May 2, 2005. After Unisys removed the case to this Court, the Plaintiffs sought certification of a class of all Unisys employees who achieved the prerequisites for additional compensation under any of the company's incentive compensation plans but were denied payment by Unisys' cancellation of the plans for the year 2001. According to the Plaintiffs, these plans specified certain performance goals for both the individual employees and each employee's respective business unit. The Plaintiffs assert that binding contracts were created by their enlistment in these plans and that Unisys breached these agreements when it refused to provide any of the rewards its employees earned in 2001. On December 5, 2005, the Plaintiffs moved for certification of a class defined as follows:

> All employees of Unisys Corporation during 2001 who participated in any Executive Variable Compensation Plan or other similar incentive compensation plan and who achieved personal and business unit objectives sufficient to qualify for incentive compensation during that year, but who were not paid incentive compensation, except for those who, prior to the institution of this suit, sought redress through the legal process.

Unisys has denied that the Plaintiffs are entitled to any compensation and has vigorously contested the propriety of class certification.

## DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure governs the initiation and

maintenance of a class action. This rule places the burden of proving entitlement to class treatment upon the proponent of certification. *See Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996). To meet this burden, the proponent must satisfy not only all of the prerequisites of Rule 23(a), but at least one of the alternative requirements of Rule 23(b). *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). Class certification is a procedural analysis that considers any supplementary evidentiary materials the parties produce in addition to the complaint but does not examine the merits of the case. *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 693 (S.D. Ga. 2002); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Nevertheless, "evidence pertaining to the requirements embodied in Rule 23 is often intertwined with the merits, making it impossible to meaningfully address the Rule 23 criteria without at least touching on the 'merits' of the litigation." *Cooper v. Southern Co.*, 390 F.3d 695, 712 (11th Cir. 2004).

The Court begins its inquiry by examining the submissions of the parties to ascertain whether the Plaintiffs have satisfied Rule 23(a). At the outset, the Court notes that the claims of each individual Plaintiff arise under different incentive plans and distinct factual circumstances. As Rule 23(c)(4) gives the Court the ability to divide a proposed class into subclasses where appropriate, the Court will consider each Plaintiff as a potential representative of a separate subclass of the individuals enrolled in each of the three plans. The Court must examine each Plaintiff's contentions individually to determine if his subclass meets the rigorous analysis mandated under Rule 23.

"Rule 23(a) provides that a class may be certified if the following requirements are met: (1) numerosity: the class is so numerous that joinder of all members is impracticable; (2) commonality: questions of law or fact are common to the class; (3) typicality: the representatives of the class present claims or defenses that are typical of the class; (4) adequacy of representation: the representatives of the class will fairly and adequately protect the interests of the class." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). Unisys has not seriously contested the first two factors, so the Court will focus its analysis on the latter two.

The typicality inquiry "directs the district court to focus on whether [the] named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "Typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law [that] unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). This requirement does not mandate that all putative class members share claims based identical factual

7

circumstances. *Cooper*, 390 F.3d at 714. As such, a "factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg*, 741 F.2d at 1337.

Turning first to the allegations of Nesbit, the Court finds typicality absent because the claims of each individual class member would arise under markedly different factual circumstances. Nesbit does not contest the fact that he is ineligible for compensation under the stated terms of the Practice Bonus Plan and has asserted that he is entitled to benefits because of oral representations made to him by his superiors. He argues that these statements made by his supervisors modified the arrangement set out in Unisys' documentation. In order to determine potential liability under these circumstances, the Court would have to embark upon a highly individualized examination of the factual events encompassed in Nesbit's contentions. This type of inquiry would not comport well with a class process as a particularized inquiry would be necessary with regard to each potential class member.

The same considerations apply to Stevenson's claim. Indeed, Stevenson has admitted that he is unsure of the exact terms of the plan he was enrolled in and has not attempted to prove that Unisys made any special arrangements with him. Under the plain terms of the Practice Recognition Plan, Stevenson would be ineligible for incentive compensation as payouts were "ultimately at the sole discretion of management," and Unisys reserved "the right to revise any provisions of [the] Plan, or terminate the Plan itself." Thus, for Stevenson to maintain a successful case, he would be forced to resort to evidence of oral modifications

of the plan. And, as the Court has observed in its analysis of Nesbit's claims, such proof is not amenable to class treatment.

Although the class allegations of Nesbit and Stevenson pursue a consistent legal theory and partially relate to one overarching action on the part of Unisys, the factual and legal determinations concerning liability on the multitude of alleged oral contracts would be based on individual promises presumably made by Unisys managers. The Plaintiffs have not provided any evidence to indicate a centralized effort on the part of Unisys to instruct its employees to act in this manner. Thus, the claims of each class plaintiff would depend upon varied conversations and assertions in diverse factual settings and not on any general policy or practice of Unisys. The particularity involved in resolving such highly individualized scenarios far outweighs any global similarities that the Court can identify among the putative class members. The Plaintiffs have therefore failed to supply the Court with a sufficient nexus between the claims of Nesbit and Stevenson and any putative class of plaintiffs to sustain their class allegations.

On the other hand, Galloway's class contentions do delineate claims potentially capable of class resolution. According to Galloway, he achieved all the prerequisites for bonus compensation under the Program Manager Incentive Compensation Plan. The terms of this plan purport to vest certain rights in enrollees if they meet specific performance objectives, and Unisys' across-the-board cancellation of those arrangements would affect all those enlisted in this plan in a similar way. Thus, Galloway's allegations are typical of the

9

putative class of Program Manager Incentive Compensation Plan enrollee plaintiffs.

To maintain a class action, the class representatives must also be capable of fairly and adequately protecting the interests of the class. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). This inquiry examines the fitness of both the named plaintiffs and class counsel for protecting the legal rights of absent class members. *Id*. In order to "protect the legal rights of absent class members . . . [who] are bound by the res judicata effect of the judgment, a principal factor in determining the appropriateness of class certification is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Id*. (quoting *Lyons v. Georgia-Pacific Corp. Salaried Employees*, 221 F.3d 1235, 1253 (11th Cir. 2000)) (internal quotations omitted).

On this point, the Court has serious concerns about Stevenson's ability to vigorously assert and defend the rights and interests of the putative class members he would represent. Throughout the pendency of this litigation, Stevenson has been out of the country and unavailable for deposition testimony. Additionally, Stevenson has admitted in his correspondence that he is unsure about the details of the plan in which he was enrolled. After considering these two factors, the Court agrees with Stevenson's own expressed doubts about his qualifications as a class representative. Thus, for this reason as well, class treatment is not an appropriate option for the subclass Stevenson seeks to represent. In contrast, Nesbit and Galloway have been dedicated representatives of the putative class throughout this

litigation, and the Court has no misgivings about their ability to protect the legal rights of absent class members.

In conclusion, only Galloway meets all the prerequisites of Rule 23(a). As a result, the Court will examine whether his class allegations satisfy Rule 23(b). The Plaintiffs pursue certification under Rule 23(b)(3), which is satisfied where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "That common questions of law or fact predominate over individualized questions means that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Rutstein*, 211 F.3d at 1233 (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). This analysis weighs the benefits class treatment may provide with regard to certain common legal or factual questions against the degree to which certain other questions in the case will necessitate a more particularized examination. *See id*. at 1234. In order to make this determination, a court must "examine the cause of action asserted in the complaint on behalf of the putative class" and ascertain "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Id*. (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C. Cir. 1984)).

Galloway's underlying cause of action contends that Unisys breached the contracts

11

it formed with employees who enrolled in the Program Manager Incentive Compensation Plan. Class treatment of these claims would provide a value to the class members in that it would allow them to avoid the replication of numerous separate legal determinations of whether Unisys' actions created liability to the plan enrollees. However, a finding that Unisys breached these contractual arrangements would not end the inquiry. The Court would still face significant factual questions regarding each class member's eligibility for compensation under the plans. A major part of this analysis would encompass an assessment of an employee's individual performance and the achievements of his or her business division. The evidence suggests that such a determination will not be merely a formulaic process because the goals set forth in the plans involve subjective criteria such as customer satisfaction and "enhanc[ing] the Unisys reputation in the industry." Moreover, the parties do not agree on the numbers to be used in determining whether Galloway met his sales and profit targets.

In sum, the Plaintiffs have not assuaged the Court's concern that the particularized focus that would be central to the evaluation of Unisys' liability to the individual enrollees would overwhelm the convenience of class treatment of certain common legal questions. Indeed, the Plaintiffs' briefs put forward limited argumentative support for their position in the face of these questions and provide very little evidentiary backing for their class contentions. The Plaintiffs' bald assertion that their class by definition encompasses only those employees who are eligible for benefits is unconvincing in light of the great likelihood

that Unisys would dispute many individual's eligibility for compensation. The Plaintiffs appear to assume that Unisys has maintained some form of record that will delineate those employees entitled to bonuses under the incentive plans. However, the Plaintiffs have failed to marshal any evidence in support of this notion or to otherwise show that these claims can be adjudicated without substantial individual attention. Therefore, the Court concludes that the Plaintiffs have not carried the burden placed upon them to show an entitlement to class treatment and that the factual questions concerning individual eligibility would predominate over any expediency class treatment would achieve. As a result, the Plaintiffs' Motion for Class Certification must be DENIED.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Plaintiffs' Motion to Certify Class (Doc. #29) is DENIED.

DONE this 25th day of August, 2006.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE
